738 F.2d 939
 Alexander DICK and Irene Dick
v.
WATONWAN COUNTY, Appellant,
and
Tri-County Human Services Board and Bill Schutt, its
Supervisor of Human Services, Deborah Hunter, Mental Health
Worker, Jerry Ruppert, title unknown, and John Doe and Mary
Roe, whose true names and titles are unknown, Appellees.
 No. 83-1633.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 9, 1984.
Decided July 11, 1984.
 
 Faegre & Benson, Jack M. Fribley, Scott W. Johnson, James Duffy O'Connor, and Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, W.D. Flaskamp, D.J. Muirhead, Minneapolis, Minn., for appellant Watonwan County.
 Gislason, Dosland, Hunter & Malecki, C. Allen Dosland, James B. Wallace, New Ulm, Minn., for appellees Tri-County Human Services Board, Deborah Hunter and Jerry Ruppert.
 Before ROSS, ARNOLD and FAGG, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Alexander and Irene Dick brought this action under 42 U.S.C. Sec. 1983 (1982) against Watonwan County, Minnesota, the Tri-County Human Services Board (Tri-County or the Board), and several employees of the Board. The jury found that the involuntary commitment of the Dicks on the complaint of Tri-County employees Deborah Hunter and Jerry Ruppert deprived them of their liberty without due process of law. The jury also found that William Schutt, another Tri-County employee, failed to train or supervise Hunter and Ruppert, and that Schutt's failure to train or supervise was part of a policy or custom of Tri-County. The District Court entered jdugment on those findings. The District Court also ruled, as a matter of law, that Hunter's and Ruppert's conduct in seeking to initiate commitment proceedings against the Dicks based on unverified information from a minor child was in accordance with a policy of Tri-County, and that Watonwan County was liable under State law for any wrong done by Tri-County.
 
 
 2
 After the District Court's decision, Tri-County paid or settled the judgment entered against it and its employees in favor of the Dicks. Therefore, Tri-County and its employees have not appealed. Watonwan County does appeal, however, and the controversy is still a live one because Tri-County has an action pending in a state court to recover from Watonwan the amount it paid to the plaintiffs. Watonwan contends principally (1) that under Minnesota law it is not responsible for Tri-County's acts, and (2) that in any case Tri-County had no official policy that could render it liable under Sec. 1983 for the acts of its employees. We agree with the second contention and reverse on that basis without reaching the first.
 
 I.
 
 3
 The facts of this case are detailed in the District Court's opinion, 562 F.Supp. 1083 (D.Minn.1983). We summarize them briefly.
 
 
 4
 The Tri-County Board was created under a Minnesota statute by Watonwan, Faribault, and Martin Counties. The Board operates the Tri-County Human Services Department, which provides social services, including chemical-dependency treatment. During the relevant period, Schutt was the supervisor of the Department, and he, Hunter, and Ruppert served as social workers within Watonwan County.
 
 
 5
 Valerie Dick, a fifteen-year-old ninth grader and the plaintiffs' daughter, told Ms. Maureen McCarthy, the school counselor, on numerous occasions throughout the fall of 1980 of bad incidents at home caused by her parents' drinking. She described an atrocious home life due to her parents' alleged alcoholic consumption. On December 4, 1980, Valerie told the counselor that she could not take it any longer. Ms. McCarthy called Tri-County and spoke with Deborah Hunter. Hunter and Ruppert interviewed Valerie, then took her to the county attorney, Daniel A. Birkholz. Birkholz also questioned Valerie and decided that it would be appropriate to apply to a court for commitment of Valerie's parents. Petitions for judicial commitment were prepared, and Hunter signed them. The County Court issued orders to apprehend the Dicks. Valerie's story was not corroborated.
 
 
 6
 On December 5, 1980, Alexander and Irene Dick were seized and imprisoned for three days in a "Detoxification Center" and were charged with being "inebriates." The Dicks were sober when they were picked up. Their cases were dismissed six months later. It was later established that Valerie had fabricated her entire story, driven by a desire to be put in a foster home in the hope that she could "get away with a lot more."
 
 II.
 
 7
 In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), the Supreme Court held:
 
 
 8
 Local governmental bodies ... can be sued directly under Sec. 1983 for monetary, declaratory, or injunctive relief where, as here, the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.
 
 
 9
 But "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under Sec. 1983 on a respondeat superior theory." Id. 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis in original). Rather, the governmental unit is responsible
 
 
 10
 when execution of [its policy] or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ....
 
 
 11
 436 U.S. at 694, 98 S.Ct. at 2037.
 
 
 12
 The Dicks may have been treated shabbily by the Board's employees in this case, but that is not enough to create liability on the part of the Board itself. The District Court held as a matter of law that Hunter's and Ruppert's acts in relying on the unsubstantiated word of a fifteen-year-old girl were a policy of Tri-County. The court made that finding based on the following testimony from William Schutt:
 
 
 13
 Q Was it within the policy of the Tri-County Human Services Department for someone such as Jerry Ruppert and Deb Hunter, to get out a petition for an involuntary confinement of someone like Alexander and Irene Dick on nothing more than the word of a 15-year-old child?
 
 
 14
 A It was within their authority to take the information to the county attorney, yes, information that they had.
 
 
 15
 Q And seek confinement of the 15-year-old child's parents?
 
 
 16
 A If that was appropriate, yes.
 
 
 17
 Q That was within the scope of procedures that you had established, was it not?
 
 
 18
 A Yes.
 
 
 19
 THE COURT: Were you the top official in this particular area that we are talking about here in the Tri-County group?
 
 
 20
 THE WITNESS: In that particular area, yes.
 
 
 21
 ....
 
 
 22
 Q Mr. Schutt, wasn't it left completely by yourself as a matter of policy, within the discretion of the individual worker, as to whether or not it was appropriate to consult with other adult kindred, such as, in this case, Homer and Irene Young--
 
 
 23
 A Yes.
 
 
 24
 Q --before getting out a petition for involuntary commitment of parents, such as Alexander and Irene Dick?
 
 
 25
 A Yes.
 
 
 26
 The Board's policy was simply that its officers should use their own discretion to decide if facts coming to their attention were serious enough to justify taking a case to the County Attorney. Schutt testified that employees "had the power to take the facts to the county attorney without first referring to me." There is no evidence of any policy, written or unwritten, making specific reference to fifteen-year-olds and their unsubstantiated allegations. It was simply up to individual officers of the Board to use their best judgment, depending on all the facts and circumstances of a given situation, whether to ask the County Attorney to ask a court for a commitment order. This policy was broad enough to allow the error of judgment that occurred here, but it is not the equivalent of the Board's having given official sanction to the uncorroborated accusations of teenagers. The Board might have chosen to adopt more detailed guidelines, and such rules might have averted the mistake that was made in this case, but the Board's decision to rely on its employees' judgment is certainly not unconstitutional in and of itself, especially in an area where so many diverse fact situations will inevitably present themselves, and in which the exercise of particularized judgment is so important.
 
 
 27
 Here, two employees made a decision that a certain state of facts was sufficient, and the decision turned out to be wrong. That is not at all the same as an official board policy. "The first 'isolated incident' [is] not enough to establish a policy or custom." Sanders v. St. Louis County, 724 F.2d 665, 667 (8th Cir.1983) (per curiam). See also Languirand v. Hayden, 717 F.2d 220, 229 (5th Cir.1983) (an isolated incident where an inadequately trained police officer was allowed to go on patrol does not constitute municipal policy or custom), cert. denied, --- U.S. ----, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984).
 
 
 28
 A somewhat similar issue arose in Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). There, the plaintiff complained that a public defender had improperly failed to prosecute an appeal on his behalf. The lawyer's action, he alleged, was taken in pursuance of rules and procedures adopted by the county, her employer. This was enough, plaintiff contended, to make the county liable under Monell. We agreed with this contention, at least to the extent of holding that the complaint could not be dismissed for failure to state a claim, Dodson v. Polk County, 628 F.2d 1104, 1108 (8th Cir.1980), but the Supreme Court reversed. The Court said:
 
 
 29
 In Monell ... we held that official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Sec. 1983 [436 U.S.] at 694 [98 S.Ct. at 2037]. See Rizzo v. Goode, 423 U.S. 362, 370-377, [96 S.Ct. 598, 603-607, 46 L.Ed.2d 561] (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under Sec. 1983). In this case the respondent [plaintiff] failed to allege any policy that arguably violated his rights under the Sixth, Eighth, or Fourteenth Amendments. He did assert that assistant public defenders refuse to prosecute certain appeals on grounds of their frivolity. But a policy of withdrawal from frivolous cases would not violate the Constitution.
 
 
 30
 454 U.S. 312, 326, 102 S.Ct. at 454 (1981).
 
 
 31
 As we read Polk County, its logic applies here. The first task in applying Monell is to identify what the governmental body's policy is. The second task is to determine whether that policy is unconstitutional. In Polk County there was a policy allowing individual public defenders to make a determination, based on all the facts and circumstances of the individual case, whether a particular appeal was frivolous and should therefore be dismissed. That policy was not unconstitutional, and therefore a complaint based upon its execution failed to state facts sufficient to hold the county. The same is true here: the policy, as we have attempted to explain, simply leaves individual officials to exercise their own discretion. It does not affirmatively sanction reliance on uncorroborated accusations, either of children or adults. It is not an unconstitutional policy, and it has not been the moving force of any constitutional violation.
 
 III.
 
 32
 The District Court also grounded the Board's liability on William Schutt's failure to train or supervise Ruppert and Hunter. In order to succeed on this basis, plaintiffs must "establish that [Schutt] had notice of prior misbehavior and that [his] failure to act upon such knowledge caused [their] injury." Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir.1981). As stated earlier, this was a first-time incident. There was nothing to indicate that it could happen. Therefore, under our cases no liability can be based on failure to train or supervise.
 
 
 33
 Tri-County does not argue that any past incident had occurred involving Ruppert and Hunter. See Brief for Appellees 13-15. It argues instead (and the District Court agreed, 562 F.Supp. at 1103-04) that the discretion given Tri-County employees by Schutt, their supervisor, is the equivalent of a reckless failure to train and supervise, for which the Board (and therefore Watonwan County) is legally responsible. We have already explained why we think the broad responsibility delegated to Board officers is not a "policy" of the Board sufficient to satisfy Monell. There is no evidence to justify rationally the jury's conclusion that a reckless failure to train and supervise was Board policy.
 
 IV.
 
 34
 Having found that there is no Board policy to justify holding the Board responsible for what happened to the Dicks, we need not discuss Watonwan's final argument that the Board's policy should not be imputed to Watonwan under Minnesota law. The judgment of the District Court against Watonwan County is reversed.