**UNITED STATES FOOTBALL LEAGUE, et al., Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, et al., Defendants.**

**No. 84 Civ. 7484 (PKL).**

United States District Court, S.D. New York.

Jan. 19, 1989.

Myerson & Kuhn, New York City (Harvey D. Myerson, Mark E. Segall, of counsel), for plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, New York City (Frank Rothman, Shepard Goldfein, Seth B. Schafler, of counsel), Davis Polk & Wardell, New York City (Robert B. Fiske, of counsel), Covington & Burling, Washington, D.C., for defendants.

## OPINION AND ORDER

### (Opinion No. 18)

LEISURE, District Judge.

This action was tried over ten weeks in the summer months of 1986. The United States Football League and certain of its member clubs (collectively the "USFL") brought suit against the National Football League, its commissioner and certain of its member clubs (collectively the "NFL") for violations of Sections 1 and 2 of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1 and 2, and of the common law.

At the conclusion of the trial, the jury rendered a series of general verdicts, and answered numerous special interrogatories. Those findings were not disturbed by this Court upon post-trial motions. *U.S. Football League v. National Football League,* 644 F.Supp. 1040 (S.D.N.Y.1986). The Second Circuit affirmed. *U.S. Football League v. National Football League,* 842 F.2d 1335 (2d Cir.1988). The USFL makes the present application for attorneys' fees.

After trial, the jury found the NFL liable on the USFL's first claim of actual monopolization, concluding that the NFL had willfully acquired or maintained monopoly power in a relevant market consisting of major league professional football in the United States. The jury also found that the NFL's unlawful monopolization of a

relevant market had caused injury to plaintiffs' business or property. Despite these findings, the jury chose to award only nominal damages of $1.00 as a result of the NFL's unlawful conduct. *See, generally, USFL,* 644 F.Supp. at 1042; *USFL,* 842 F.2d at 1377.

Plaintiffs were not as successful on their remaining claims. The jury found that the NFL had not violated Section 2 by attempting or conspiring to monopolize. Additionally, although the jury found that one or more of the defendants had participated in a contract, combination or conspiracy to exclude competition within major league football, that combination was found not to be an unreasonable restraint of trade in violation of Section 1 of the Sherman Act. Also, the NFL's television contracts were not found to be an unreasonable restraint of trade violative of Section 1, nor did the jury accept the plaintiffs' "essential facilities" claim. *USFL,* 644 F.Supp. at 1042.

The issues presented by this petition basically fall into three categories: 1) the adequacy of the documentation of the fees; 2) whether the USFL should receive attorneys' fees at all; and 3) the proper amount of those fees. Additionally, the NFL contests the costs application of the USFL.

## 1. DOCUMENTATION OF THE FEES SOUGHT.

The NFL challenges the fee petition because the documentation of the hours spent is alleged to be inadequate. The original computer printouts, which *are* the contemporaneous records, are submitted as Exhibit A, attached to the Affidavit of Mark E. Segall, Esq., sworn to on August 17, 1988 ("Segall Affidavit"). Those records had previously been re-typed into a more legible form, and attached as Exhibit C to the Affidavit of Harvey D. Myerson, Esq., sworn to on May 2, 1988 ("Myerson Affidavit").[1] The initial submission of the

---

[1] The USFL is currently represented by the law firm of Myerson & Kuhn, which is pursuing this fee application. The USFL was represented at trial by the now dissolved firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey ("Finley Kumble"). Harvey D.

Myerson, Esq., was lead counsel for plaintiffs at trial, and has personal knowledge of the billing matters at issue in this petition.

At the filing of the application, current USFL counsel no longer had access to the computers where the Finley Kumble billing information

re-typed computer records satisfied the requirement that "contemporaneous" time records be submitted. *Lenihan v. City of New York*, 640 F.Supp. 822, 824 (S.D.N.Y. 1986). "Reconstructed" records, of course, would not be sufficient. Comparison of the re-typed records with the original computer runs subsequently submitted to the Court and opposing counsel indicates, however, that the re-typed printouts are not impermissibly reconstructed. The re-typed format served its purpose, which was to be helpful in this Court's review of the fee application.

■ The NFL has picked out certain discrepancies between the re-typed records and the original computer runs. It argues that these discrepancies should invalidate any fee award. These claims warrant little discussion; the discrepancies that do exist are few, minor, and in any event largely justified. It is worth noting that the *USFL* submitted the original computer time printouts, as an exhibit, to the Court for analysis; the NFL would have made its comparative challenges without providing the Court a complete record to review.

The NFL complains of isolated instances of alleged deletion of overspecific language, *see,* Exhibit D, attached to Affidavit of Seth B. Schafler, Esq., sworn to on July 14, 1988 ("Schafler Affidavit"), and inclusion of descriptive language, *see,* Exhibit E, attached to Schafler Affidavit, in the re-typed time sheets. The few instances of inclusion were based on personal knowledge of the attorneys involved. Segall Affidavit ¶ 25. The Court finds that these minor discrepancies in the re-typed time sheets, especially when compared to the full original computer runs submitted to the Court, do not render any part of the fee application invalid.

The documentation of the billed time is also challenged as impermissibly vague.

The Second Circuit set out the required specificity in *New York State Ass'n For Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983) (the records "should specify, for each attorney, the date, the hours expended, and the nature of the work done.") "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir.1974). *See also, Williamsburg Fair Housing Comm. v. Ross–Rodney Housing Corp.*, 599 F.Supp. 509, 517 (S.D.N.Y.1984); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 170 (3d Cir.1973).

The timekeeping practices of the USFL's counsel here are consistent with standards prevalent in the legal profession.[2] The NFL's claim that 50% of the entries are impermissibly vague is far overstated. The NFL assesses individual entries, and even individual *parts* of entries, as if they were isolated in a vacuum. Upon examination of the time sheets in context, given the Court's familiarity with the case and its "own assessment of what is appropriate for the scope and complexity of the particular litigation," *Carey*, 711 F.2d at 1146, most of the alleged vagueness evanesces.

■ There are, however, numerous entries that are, in fact, too vague under the *Carey* standard, even when taken in context. While not approaching the 50% figure asserted by the NFL, the Court cannot ascertain whether such entries are properly recoverable or not. Fees cannot, therefore, be properly awarded for those entries. Because of this vagueness, the ultimate fee award will be reduced by 10%. *See, Orshan v. Macchiarola*, 629 F.Supp. 1014 (E.D.N.Y.1986) (Court reduced fee award by 25% when faced with inadequately re-

---

was stored. Segall Affidavit ¶ 5. Additionally, records for work done for the USFL on this case by the law firm of Spenglar Carlson Gubar Brodsky & Frischling ("Spenglar Carlson") just prior to this petition were not available. Segall Affidavit ¶ 19. Those actual records are now submitted as Exhibit D, attached to Segall Affidavit.

2. *See, e.g.,* Exhibit B to Segall Affidavit. That document is a petition for statutory fees submitted in an unrelated case by Davis Polk & Wardell, one of the law firms currently representing the NFL. That submission, for which full compensation was awarded, is substantially similar in detail to the one submitted by the USFL here.

constructed records that did not distinguish compensable and noncompensable time.); *Chrapliwy v. Uniroyal,* 583 F.Supp. 40, 47 (N.D.Ind.1983) ("[A]mbiguities arising out of poor time records should be resolved against the applicant," and court reduced compensation for 50 hours of undocumented telephone calls by 10%.).

## 2. ENTITLEMENT TO FEES.

■ The USFL contends that actual entitlement to fees is not, in fact, an issue at all. An award of fees under section 4 of the Clayton Act is "mandatory for prevailing plaintiffs." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 415 n. 5, 98 S.Ct. 694, 697 n. 5, 54 L.Ed.2d 648 (1978). The Second Circuit has reversed a district court for refusing to award fees to a prevailing antitrust plaintiff, noting that "[s]ection 4 of the Clayton Act expressly requires such an award." *Hydrolevel Corp. v. American Soc. of Mechanical Engineers,* 635 F.2d 118, 130 (2d Cir.1980), *aff'd,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed. 2d 330 (1982). There are numerous cases where fees to prevailing antitrust plaintiffs are characterized as "mandatory." *See, e.g., Home Placement Service, Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1210 (1st Cir.1987); *Baughman v. Cooper–Jarrett, Inc.,* 530 F.2d 529, 531 n. 2 (3d Cir.), *cert. denied,* 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976).

The NFL concedes, as it must, that a prevailing antitrust plaintiff is entitled to a mandatory award of attorneys' fees under section 4 of the Clayton Act. The NFL makes the only real argument left to make, namely, that the USFL, despite the jury's finding on the monopolization claim, was not a "prevailing party."

The NFL thus asserts that the USFL's fee application should be denied in its entirety. The arguments that the USFL was not a "prevailing party" are essentially that: 1) the USFL lost a major portion of its case, and did not achieve all of the benefits it sought to achieve by the litigation; and 2) the USFL did not prove any damage with regard to the claim it prevailed upon.

### A. Benefits of the Litigation.

■ A significant portion of the NFL's "benefits of the litigation" argument is based on language quoted in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'") (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir. 1978)). The NFL thus contends that a certain minimum threshold level of "benefits" must be achieved before a party who establishes antitrust violations becomes a prevailing party under the antitrust laws.

*Hensley,* and all of the other cases relied upon by the NFL in this regard, involve *discretionary* awards of attorneys' fees under provisions like § 1988, and not *mandatory* provisions such as § 4 of the Clayton Act (15 U.S.C. § 15).[3] The applicability of those cases to the present issue is therefore limited. The characterization of a party as "prevailing" in a discretionary scheme involves different considerations than a mandatory scheme, in that in the former the Court is required to make an initial decision *whether* an award of fees is appropriate.[4] The differences between

---

**3.** Other § 1988 cases cited by the NFL include, *e.g., Martin v. Heckler,* 773 F.2d 1145 (11th Cir. 1985); *New York City Unemployed & Welfare Council v. Brezenoff,* 742 F.2d 718 (2d Cir.1984); *Kentucky Ass'n for Retarded Citizens, Inc. v. Conn.,* 718 F.2d 182 (6th Cir.1983).

The NFL also relies on cases under other discretionary fee awards provisions, similar in this respect to the Civil Rights Attorneys Fees Award Act of 1976. *E.g., Counsel v. Dow,* 849 F.2d 731 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988) (Handi-

capped Children's Protection Act of 1986, 20 U.S.C. § 1415(e)(4)(b)); *Martin v. Heckler,* 773 F.2d 1145 (11th Cir.1985) (Equal Access to Justice Act, 28 U.S.C. § 2412).

**4.** The benefits achieved by the litigation are not, of course, irrelevant in mandatory fee award schemes. Such concerns may have significant effect upon the determination of what a "reasonable" fee is. *See, e.g., City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). *See also,* Part 3 below.

mandatory and discretionary fee provisions are significant here.

These differences were implicitly recognized by Congress in its enactment of discretionary fee award schemes. In passing § 1988, for example, Congress intended that the *amount* of attorney's fees awarded should be governed by the same standards as those that apply to antitrust-type litigations. Congress, however, clearly did not, in passing § 1988, adopt the "shall recover" language of 15 U.S.C. § 15. *See,* S.Rep. No. 94–1011, p. 6 (1976), 1976 Cong. & Admin.News, pp. 5908, 5913. The fundamental difference in the initial posture of the fee award inquiry in mandatory and discretionary schemes was thus maintained. The NFL's argument, if accepted, would essentially negate the mandatory language of the Clayton Act fee provision, and subject antitrust plaintiffs to the same discretionary threshold considerations that apply to plaintiffs seeking fees under civil rights, and other discretionary, fee award statutes.

The Supreme Court in *Hensley* itself noted that the "standards set forth in this opinion are generally applicable in all cases in which Congress has *authorized* an award of fees to a 'prevailing party.'" 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7 (emphasis supplied). Congress here has not "authorized," but *mandated,* an award of fees. Again, the inquiry into whether there should be an award is fundamentally different under the two types of statutes.

The NFL's characterizations of the goals and benefits of the litigation, *see, e.g.,* NFL's Memorandum of Law in Opposition to Plaintiffs' Petition for Attorneys' Fees and Costs ("NFL Mem."), at pp. 6–22, while perhaps relevant to the Court's determination of a "reasonable" fee, are simply inapposite to a decision whether to award a fee at all.

## B. Damages.

■ The NFL also argues that the USFL did not attempt to prove damages specifically related to the § 2 claim upon which it prevailed, and thus it was not a true "prevailing party." The NFL's arguments here confuse dama*ges* with the fact of damage, or injury. Obviously, the USFL did not prove substantial damages in receiving a $1 verdict. The verdict for the USFL necessarily, however, meant that the jury found some injury, as an element of the Sherman Act violation.

The jury in this action was instructed that to find the NFL liable to the USFL for monopolization, in violation of § 2 of the Sherman Act, it had to find that (1) the NFL possessed monopoly power in a relevant market; (2) the NFL knowingly acquired or maintained that power; (3) this power was maintained through anticompetitive conduct; and (4) this conduct *injured* the USFL. *USFL,* 842 F.2d at 1377. The jury expressly found each of these elements, and in a special interrogatory, explicitly stated that it found injury. *USFL,* 644 F.Supp. at 1042.

Section 4 of the Clayton Act provides specifically that "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ... shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorneys' fee."

The NFL's entire argument in this regard is based on the erroneous assertion that an award of fees for an antitrust violation requires proof of some threshold level of "damages," in addition to the fact of injury. NFL Mem. at 22, n. 2.[5] Such a position would not allow a fee award in *any* case where the plaintiff recovered only nominal damages. The NFL argues that this should be the law,[6] although it con-

---

**5.** A similar and corollary assertion is that an action where substantial damages are not proved is, in effect, a "declaratory judgment," and therefore does not support attorneys' fees. *See, e.g., Allen–Bradley Co. v. Local Union No. 3,* 51 F.Supp. 36, 40 (S.D.N.Y.1943), *rev'd,* 145 F.2d 215 (2d Cir.1944), *rev'd,* 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945).

**6.** The cases that the NFL cites for this view do not stand for the proposition that some level of dama*ges* are required, but merely that an award of attorneys' fees is not proper where no *injury* is shown. *E.g., Alden–Rochelle, Inc. v. ASCAP,* 80 F.Supp. 888, 899–900 (S.D.N.Y.1948) ("plaintiffs have not shown any *injury* from defend-

cedes that such is not the case. Transcript of Oral Argument, December 14, 1988, at p. 14.

There are a host of cases where nominal damage awards have supported attorney fee awards. *See, e.g., Auwood v. Harry Brandt Booking Office, Inc.*, 647 F.Supp. 1551, 1557 (D.Conn.1986) ("It is beyond dispute that a finding of nominal damages [under the antitrust laws] is sufficient for an award of attorney fees."), *aff'd in part, vacated in part on other grounds*, 850 F.2d 884 (2d Cir.1988); *Home Placement Serv. Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1205–09 (1st Cir.1987).

The NFL attempts to distinguish these cases by asserting that in each of them the plaintiffs attempted to prove damages on the specific claim prevailed upon. This is said to contrast to the present case, where the offered damages proof related only to television claims. The USFL's damages proof, while relating solely to television, did seek generally to establish damages from the unlawful monopolization of professional football. It cannot be said that such proof had no effect on the jury's finding of injury, a finding which was not disturbed on post-trial motion or appellate review. *USFL*, 644 F.Supp. at 1056–58; *USFL*, 842 F.2d at 1376–77.

In any event, the distinction between a plaintiff who does not offer adequate proof of damages on a specific claim, and one who offers proof that is rejected by the factfinder, is not meaningful. In both cases the damages evidence goes solely to the degree of success enjoyed by the plaintiff.[7]

In sum, the jury's finding of injury and an antitrust violation precludes the NFL's arguments that the USFL was not a prevailing party under Section 4 of the Clayton Act. The award of counsel fees itself is therefore a non-issue. A reasonable fee

award under the statute is mandatory. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n. 5, 98 S.Ct. 694, 697 n. 5, 54 L.Ed.2d 648 (1978); *Hydrolevel Corp. v. American Soc. of Mechanical Engineers*, 635 F.2d 118, 130 (2d Cir.1980), *aff'd*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). The Court must determine what award would be "reasonable."

### 3. AMOUNT OF THE FEE AWARD.

#### A. Specific Elements of the Fee Application.

In addition to general objections to an award of attorneys fees at all, the NFL challenges various aspects of the claimed fees as not compensable. These concerns must initially be addressed. For the following reasons, the Court finds the USFL's fee petition essentially proper as a preliminary matter; the fees sought are compensable.

■ The lawsuit involved claims that the USFL did not prevail upon. If those claims were "distinctly different claims for relief that are based on different facts and legal theories" from those on which plaintiff prevailed, time spent in their pursuit is not compensable. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983). However, "to the extent that work bore on both a successfully asserted antitrust claim and other, noncompensable claims, that work may be fully taken into account" when awarding fees. *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1057 (S.D.N.Y.1977), *aff'd without opinion*, 578 F.2d 1368 (2d Cir.1978). The NFL takes issue with various specific aspects of the fee application.

■ The USFL based separate claims upon the television-related activities of the NFL; it lost those claims. As this Court has previously indicated, however, it cannot

---

ants' violations of the antitrust laws") (emphasis added).

**7.** By only putting on television damage evidence, the USFL did not in some way "make a deliberate choice" to forgo its Clayton Act remedy, as the NFL claims. In *Kelco Disposal, Inc. v. Browning–Ferris Indus. of Vermont, Inc.*, 845 F.2d 404 (2d Cir.1988), cited by the NFL for this proposition, the plaintiff pursued state law remedies after establishing an antitrust violation, and therefore could not get fees under the federal fee shifting statute. The USFL here is most definitely pursuing its federal remedy, including counsel fees.

be said that the television evidence was completely distinct, either factually or legally, from the broad monopolization claim that plaintiff prevailed upon. *USFL*, 644 F.Supp. 1040, 1056–58.[8] *Cf., Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940; *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 551 (7th Cir.1986) (claims unrelated where "entirely distinct and separate" courses of conduct involved). The USFL's television evidence cannot be conclusively separated from the jury's definition of a relevant market, its finding of monopoly power in that market, or its conclusion that behavior which the NFL repeatedly described as innocent was in fact intended to stifle competition. As such, the work expended in developing the television evidence will not be excluded wholesale from the fee application. *Kane, supra*, 439 F.Supp. at 1057.

Although Commissioner Rozelle was quite appropriately found by the jury to be not personally liable as a defendant based on evidence in the case, the NFL in its argument incorrectly concludes that all time spent probing his activities and his role as Commissioner is non-compensable. Rozelle was not merely a party defendant, but chief executive officer of the NFL. The time spent investigating and developing the evidence with regard to Rozelle in his capacity as Commissioner of the NFL was therefore essentially related to the successful monopolization claim, and will not be excluded. Again, this Court specifically cited parts of that evidence in denying the NFL's motion for judgment n.o.v. *USFL*, 644 F.Supp. at 1056–58.

The NFL makes vague challenges to various allegedly "collateral" matters, including pre-trial motions involving certain predatory conduct, evidentiary efforts related to prior NFL antitrust litigation, injunctive relief,[9] and lobbying. NFL Mem. at pp. 50–51. As an initial matter, although the NFL had complete access to the original computer runs of the USFL's billable time, and adequate opportunity for a comprehensive review of that material, it has not identified any time devoted exclusively to. these allegedly non-compensable activities. *Cf., Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984). Additionally, to the extent that this time was spent on alternative ways to obtain relief for the NFL's illegal monopolization of professional football, it is fully compensable. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

With regard to the other matters termed "collateral," the NFL has similarly failed to identify particular non-compensable time, and makes only general conclusory objections to certain elements of the application. The aggregate of these claims amount to but a small fraction of the fee application, and in any event those aspects are either not actually claimed in the petition, or are fully compensable.

The NFL makes a general objection to time allegedly spent on a lawsuit by the USFL against the ABC television network. No time spent in prosecuting that lawsuit is actually sought in this petition; an entirely different law firm for the USFL was involved. The references to "ABC litigation" in the computer runs and time sheets here refer to the legitimate monitoring of related litigation by the USFL's counsel in this action. Competent representation would require such monitoring, and those time entries are fully compensable.

The USFL successfully defeated a motion by the New Orleans Breakers to intervene in this lawsuit, which kept the lawsuit focused on the issues raised by the USFL, and therefore reduced the fees incurred by

---

**8.** This Court cited record proof set out in the USFL's Memorandum in Opposition to Defendants' Motion for Judgment Notwithstanding the Verdict, at pp. 5–14. That proof included extensive television-related evidence.

**9.** The NFL's general objection to fees charged for "injunctive relief" is misleading. No time spent on post-trial injunctive motions is being claimed. Affidavit of Harvey D. Myerson, Esq., sworn to on May 2, 1988 ("Myerson Affidavit"), ¶ 10. The few references to injunctive relief occur in preliminary stages of the litigation, when various alternative relief was legitimately being explored.

*both* sides. Time was also expended, and charged, for the pre-trial decision to drop the Los Angeles Raiders as a defendant. That decision ultimately led to favorable testimony from Al Davis, as a principal in the Los Angeles organization. This Court cannot say that these activities did not positively affect the success of the USFL at trial. *Kelley v. Metropolitan County Bd. of Education,* 558 F.Supp. 468, 476 (M.D. Tenn.1983), *aff'd in relevant part, rev'd in part on other grounds,* 773 F.2d 677 (6th Cir.1985), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986).

The substantial public interest in this case required counsel to deal extensively with the media. The nature of the lawsuit necessitated this activity; the comparatively few hours spent on required media relations are fully compensable. *Dick v. Watonwan County,* 562 F.Supp. 1083, 1109 (D.Minn.1983), *rev'd in part on other grounds,* 738 F.2d 939 (8th Cir.1984).

■ The NFL objects to the inclusion of charges for travel time, but does not dispute that such time was necessary or that it was billed. The Court notes that the USFL retained New York counsel for the New York litigation. The law and the realities of legal practice reflect the correctness of the inclusion of travel time here:

> When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time.... And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees.

*Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984). Of course travel time not normally billed to clients, for example by public interest law groups, should not be awarded, as it would provide a windfall for the prevailing party. *See, Thomas v. Board of Educ.,* 505 F.Supp. 102, 104 (N.D. N.Y.1981). This is not the case here; travel time is properly includable.

The NFL raises another general objection to claimed fees for the USFL's successful motion to disqualify a law firm initially retained by the NFL. There are two points worth noting here. First, much of the time spent on that motion is *not* being claimed in this petition, in that it was performed by the USFL's prior counsel. Second, it is ironic that the NFL complains about fees incurred as a direct result of its own retention of the law firm that helped structure the USFL at its formation. Those incidental fees relating to the disqualification motion are compensable.

The NFL contests the alleged inclusion of "Oakland" time in the fee application. There was a separate litigation instituted by the USFL in Oakland, and time spent exclusively on that litigation is concededly not compensable. The NFL asserts that such time remains in the fee application. The Court disagrees. A meticulous review of the Oakland-related time was undertaken prior to the filing of this petition. Segall Affidavit, ¶ 22. Over 150 entries, representing 550 hours of time relating to that separate litigation, were deleted from the fee request. Additionally, certain compensable time was deleted because it was inextricable from time spent on the Oakland litigation, *see,* Exhibit E, attached to Segall Affidavit, and other "mixed" time was reduced, *see,* Exhibit F, Schafler Affidavit. The time remaining properly refers to Oakland-related matters that were relevant to this trial, and to the monopolization claim that the USFL prevailed upon. The conspiracy regarding the City of Oakland was cited by this Court as a particularly persuasive example of predatory behavior by the NFL. *USFL,* 644 F.Supp. at 1058. Upon review of the submitted time records, the Court is satisfied that the remaining entries are compensable, and the mere mention of the word "Oakland" does not render any particular entry non-compensable.

■ The NFL contests $1,042,882.55 of the fee application, in that that sum reflects time billed for work by paralegals, summer associates, and other non-lawyer personnel. Such exclusion is consistent

with the decision of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974), where the Court held that only the costs of providing such services may be recovered. Various intervening developments in the law, as well as a practical evaluation of the billing practices of law firms, lead this Court to conclude that *City of Detroit* is no longer good law, and the fees charged for non-legal personnel should be recoverable.

Since *City of Detroit*, Congress enacted the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. As previously noted, Congress intended that the amount of fees awarded be governed by the same standards as other complex federal litigation, such as antitrust cases.[10] The Senate Report to that bill cited cases that had "correctly applied" these standards. S.Rep. No. 94–1011, p. 6 (1976), 1976 U.S. Code Cong. & Admin.News at 5913. One of those cases, *Davis v. County of Los Angeles*, 8 Empl.Prac.Dec. (CCH) P9444 (C.D.Cal.1974) specifically included an award of fees at $10/hour for work performed by paralegals. Additionally, the Supreme Court in *City of Riverside v. Rivera*, 477 U.S. 561, 565–66 n. 2, 106 S.Ct. 2686, 2690 n. 2, 91 L.Ed.2d 466 .(1986) affirmed an award of $25/hour for time spent by non-lawyers.

In addition to the legislative history of § 1988 and the result in *City of Riverside*, numerous cases, many in the antitrust context, have held non-lawyer based fees to be recoverable. *See, e.g., Morgan v. District of Columbia*, 824 F.2d 1049, 1067 (D.C.Cir. 1987); *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 653–54 (7th Cir. 1985); *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1210 n. 19 (9th Cir.1975), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976); *Pickman v. Dole*, 671 F.Supp. 982, 990 (S.D.N.Y.1987); *Lenihan v. City of New York*, 640 F.Supp. 822, 828 (S.D.N.Y. 1986); *Litton Systems, Inc. v. American*

*Tel. & Tel. Co.*, 613 F.Supp. 824, 833 (S.D. N.Y.1985); *Mid–Hudson Legal Services v. G & U, Inc.*, 465 F.Supp. 261, 273 n. 12, 174 n. 16 (S.D.N.Y.1978).

As a simple matter of economics, it is desirable to reduce the cost of litigation by encouraging the utilization of less expensive non-lawyer personnel where possible. There is no windfall; the USFL counsel billed the client at the non-lawyer rates it is seeking. To deny recovery of those fees would perversely provide incentive to use and bill more expensive attorney time, whenever possible. "To the extent that such work is done by non-lawyers at lower time rates than would have been the case had the work been done by lawyers, the losing party benefits and has little cause to complain." *Selzer v. Berkowitz*, 477 F.Supp. 686, 690 n. 3 (E.D.N.Y.1979).

■ Finally, with regard to the amount recoverable under § 4 of the Clayton Act, the NFL contests the expenses (which it terms "costs") that were billed directly to the client, and thus not included in counsels' overhead. The rule is that such fees *are* recoverable, notwithstanding that they were billed to the client separately. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (awards "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients") (citation omitted). *See also, Dominic v. Consolidated Edison Co.*, 652 F.Supp. 815, 822 (S.D.N.Y.1986), *aff'd*, 822 F.2d 1249 (2d Cir.1987); *Cool v. Police Department of City of Yonkers*, 620 F.Supp. 954, 956–57 (S.D.N.Y.1985); *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1296, 1314 (E.D.N.Y. 1985), *aff'd in pertinent part*, 818 F.2d 226 (2d Cir.1987); *Williamsburg Fair Housing Comm. v. Ross–Rodney Housing Corp.*, 599 F.Supp. 509, 522 (S.D.N.Y.1984). *But see, Litton Sys., Inc. v. AT & T Co.*, 613 F.Supp. 824, 836 (S.D.N.Y.1985).[11]

---

**10.** *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir.1983).

**11.** Certain pre-*Reichman* cases in this Circuit have properly rejected attempts to recoup ex-

penses billed to clients under the "cost of suit" provision, but not the attorneys' fee provision, of 15 U.S.C. § 15. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62

The rationale behind the rule is plain, and was explained in *Henry v. Webermeir,* 738 F.2d 188, 192 (7th Cir.1984):

> [T]he line between fees and expenses is arbitrary. A lawyer's hourly billing rate includes many overheard expenses such as local telephone calls. It is impossible to believe that Congress would have wanted prevailing parties to get back their local telephone expenses (invariably included in the hourly fee) but not their long distance expenses (invariably billed separately); or get back their secretarial expenses—which are included in overheard and therefore are billed as part of the lawyers hourly rate rather than separately—but not the expenses of word processing, often billed separately to the client.

*See also, Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); *Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir.1983); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1188–92 (11th Cir.1983); *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Wheeler v. Durham City Board of Education,* 585 F.2d 618, 623–24 (4th Cir.1978).

The sums directly billed to the USFL are substantial; they constitute over one million dollars of the claimed fees. In accord with the authorities noted above, however, there is nothing about the nature of those claimed fees that renders them non-recoverable.

### B. A Reasonable Fee.

Determination that the gross requested fees do not make claims for non-compensable time is only the first step in the assessment of a reasonable fee. The USFL cor-

rectly notes that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stevenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). The NFL has *not* challenged the reasonableness of the hourly rates charged by the USFL, or asserted that the time expended on any specific element of the litigation was not reasonably spent.

The legitimate issues in this application involve reduction of the basic lodestar fee, to reflect a "reasonable" amount. The USFL has allegedly already made a 20% reduction in that loadstar amount, in the exercise of "billing judgment."

■■■ There is a presumption that a lodestar-calculated fee is "reasonable." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The burden of establishing that a reduction is proper is on the moving party. *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 118 (3d Cir.1976); *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980) (en banc).

■■■ The amount of fees under § 4 of the Clayton Act rests within the sound discretion of the Court. *Montague & Co. v. Lowry,* 193 U.S. 38, 48, 24 S.Ct. 307, 310, 48 L.Ed. 608 (1904). An award of only nominal damages is a element to be considered, but " 'this does not mean that the fee award may also be nominal.' " *Home Placement Service, Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1210 (1st Cir. 1987) (citation omitted). *Some* reduction of the gross lodestar amount is undoubtedly proper in this case, given the limited success of the USFL, and its recovery of only nominal damages. *Hensley v. Eckerhart,*

---

L.Ed.2d 783 (1980). The federal costs statute applies equally to actions *not* brought under fee shifting provisions. No problem arises where such expenses are recovered as part of a fee shifting statute. As the cases noted above illustrate, the denomination of these billed expenses as recoverable fees is eminently sensible, and indicated by the law in this Circuit. The USFL

should not be penalized for billing expenses directly, instead of raising its hourly rates (which have not been challenged) to cover the expenses as overhead.

Again, the standards under civil rights fee provisions and 15 U.S.C. § 15 are the same with respect to the amounts awarded. See n. 10, supra.

461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3; *Friends of the Earth v. Eastman Kodak Co.,* 834 F.2d 295 (2d Cir.1987).

■ Consideration of the relevant factors in determination of a "reasonable" fee, however, at least partially supports the USFL's contention that the full amount requested is itself reasonable.[12] It is not seriously disputed that the time and labor required, the novelty and difficulty of the issues, the skill required of counsel, comparison with customary fees, time limits imposed by circumstances, and experience, reputation and ability of counsel all point strongly to a maximum award. This was an extremely complex action involving unique issues, even within the realm of modern antitrust law. The litigation proceeded at a breakneck pace, as required by the Court's scheduling orders. What might have been several years of discovery was compressed into but a few months, and the result was a jury verdict within fifteen months after the filing of the complaint. Any review of the actual conduct and legal output of the USFL's counsel throughout the hotly contested litigation clearly supports a maximum fee recovery.

The single factor militating a reduction of the lodestar amount, to reflect a reasonable fee, is evaluation of the results obtained. *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941 ("the most critical factor is the degree of success obtained"). In the present case this is a crucial factor. As the NFL notes, the USFL did not succeed on

the heart of its case, namely proving substantial damages and specific antitrust violations related to television. In the context of the antitrust laws, and their enforcement by private attorneys general, this case was not the sort of clear-cut victory that unequivocally justifies a full fee, to verify and further the purposes of the antitrust provisions.

The ambiguous inferences that might be drawn from the jury's verdict are not, however, as severe as the NFL claims. The NFL ignores the fact that it was decisively, unquestionably, found to have violated the antitrust laws. Instead the NFL speculates, and impugns, the veracity and motivations behind the lawsuit. The NFL then argues that a "reasonable" fee cannot be more than one dollar.

This extreme position must be rejected. The NFL cites, as support, cases where courts have rejected fee applications under discretionary fee shifting schemes. *See, e.g., New York City Unemployed v. Brezenoff,* 742 F.2d 718 (2d Cir.1984). In those cases, the Court never considered what amount a "reasonable" fee should be, because discretion was exercised to find that the party had not prevailed.[13] That discretion, as noted above, is not present here.

The NFL also cites *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) for the proposition that the amount recovered, in an action that was instituted primarily to recover damages, is a critical element in fixing a rea-

**12.** The factors properly considered in determining a reasonable *amount* of attorneys fees are the same for discretionary schemes like § 1988 and mandatory schemes like 15 U.S.C. § 15. *McCann v. Coughlin,* 698 F.2d 112, 129 (2d Cir. 1983). Those factors were set out by Congress and quoted in *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3. They are:
 1. time and labor required
 2. novelty and difficulty of the questions
 3. skill required to perform the legal service properly
 4. preclusion of attorney's employment due to acceptance of the case
 5. customary fee
 6. whether fee is fixed or contingent
 7. time limitations imposed by client or circumstances
 8. amount involved and results obtained

 9. experience, reputation and ability of attorneys
 10. "undesirability" of the case
 11. nature and length of the professional relationship with the client
 12. awards in similar cases.

**13.** The other cases cited by the NFL do not indicate that a nominal "reasonable" fee is mandated in this case. In *Muraresku v. Amoco Oil,* 648 F.Supp. 347 (E.D.Pa.1986), the fees were requested under a statute, 15 U.S.C. § 2805(d), which explicitly authorizes the District Court to deny fees to plaintiffs who only recover nominal damages. *Diver v. Goddard Mem. Hospital,* 783 F.2d 6 (1st Cir.1986), was merely an affirmance of the district court's insubstantial fee award, made after application of *Hensley* factors, including the fact that liability was conceded on the only claim "prevailed" upon.

sonable attorney fee award. *Id.* 477 U.S. at 585, 106 S.Ct. at 2700 (Powell, J. concurring). That general proposition is unproblematic. In *Rivera* itself, however, the Supreme Court affirmed a fee award of $245,456.25. That sum represented *full* compensation for *every single hour* spent on the litigation, in a case where (1) seventeen of 32 defendants were granted summary judgment years before trial; (2) nine of the remaining 15 defendants prevailed at trial; (3) plaintiffs obtained no injunctive or structural relief; and (4) the damage recovery was a fraction of the attorneys' fees awarded. *Rivera* clearly cannot mandate a "reasonable" fee of one dollar in this litigation.

### C. The Fee Award.

As to the actual award, it is clear from the above discussion that some reduction in the basic lodestar amount is mandated by the limited success of the USFL. Although the specific challenges to the compensability of various aspects of the petition discussed above are meritless, a full lodestar-calculated fee represents too large an award given the circumstances of this litigation. The Court now turns to the consideration of what a "reasonable" fee should be in this case.

The USFL asserts that it has already reduced the basic lodestar amount by 20% ($1,953,320.08) in the exercise of billing judgment, and in recognition of its limited success. The adjusted claimed amount, through April 29, 1988, is $7,662,702.13. This reduction is said to reflect the "limited success" factor.

In addition to this percentage reduction, the USFL asserts that it made further reductions in that it: 1) charged historic billing rates, instead of the current rates it says it would be entitled to under *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); [14] and 2) USFL counsel understated time actually spent on the litigation.

The NFL challenges the authenticity of these voluntary reductions. The Court, however, is satisfied that a significant amount of clearly compensable time, as well as some of the more questionable entries, were eliminated from the fee application. The result, as noted above, is an application that is basically proper on its face, and which is somewhat lower than it legitimately could have been.

The case of *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263 (N.D.Cal.1979) is somewhat instructive. That case, like this one, involved a complex antitrust action where liability was established, but only nominal damages were awarded. The court there felt that a downward adjustment of 25% of the lodestar amount was "mandated," *Id.* at 1279, in order that the fees awarded reflect some relation to the award.

This Court likewise feels compelled, under the law as stated in *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941, and *Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295, 298 (2d Cir.1987), and as described in Part 2.B. above, to further reduce the amount claimed by the USFL. That claimed amount (minus that portion expended on this fee petition itself—see Part 3.D. below) will therefore be reduced by 20%, to reflect a "reasonable" fee under 15 U.S.C. § 15. Together with the 10% reduction for those time entries that are impermissibly vague under the standards of this Circuit, the reduced fees for the litigation of the main action total $5,271,504.55.

### D. The Fee Petition.

 Implicit in the NFL's rejected challenge to the amount of fees sought, and assertion that a "reasonable' amount would be $1, is the argument that the USFL is not entitled to fees incurred in preparing this petition. This is contrary to settled law in this Circuit. *Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir.1979), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Litton Systems Inc. v. AT & T*, 613

---

**14.** *But see, Richards v. NYC Board of Education,* No. 83 Civ. 7621 (S.D.N.Y., June 27, 1988) (Mot- ley, J.) [1988 WL 70209].

F.Supp. 824, 832 (S.D.N.Y.1985). The USFL quite "reasonably believed that its application would be hotly contested and spent considerable time making the necessary preparations ... [the opposing party] will not be heard to complain now of inefficiencies for which it was in significant part responsible." *Litton,* 613 F.Supp. at 832.

The time required to document and prepare the fee application is unrelated to the success on the merits, and the amount spent on the petition will therefore *not* be reduced by the 20% factor reflecting that lack of success. *See, Williamsburg Fair Housing Comm. v. Ross–Rodney Housing Corp.,* 599 F.Supp. 509, 521 n. 12 (S.D.N.Y. 1984); *Ross v. Saltmarsh,* 521 F.Supp. 753, 764 n. 52 (S.D.N.Y.1981), *aff'd without opinion,* 688 F.2d 816 (2d Cir.1982).[15] As of April 29, 1988, the total fees and expenses incurred amounted to $131,988.34. From April 29 through September 30, 1988, fees and recoverable expenses totalled $111,797.92. Affidavit of Mark E. Segall, Esq., sworn to on October 18, 1988 ("Supplemental Segall Affidavit"). The aggregate award for fees expended in pursuing this petition thus far is, then, $243,786.26.

That amount will be added to the adjusted amount of $5,271,504.55, for a total fee award of $5,515,290.87.

The USFL has reserved an opportunity to submit a final affidavit, detailing the fees incurred in the argument of this motion. That application will be submitted within 30 days of the issuance of this opinion. It will be reviewed by this Court, and an additional award, if proper, will issue for the fees so incurred.

*4. Statutory Costs.*

■ The NFL specifically[16] challenges one element of the $62,220.92 costs application that the USFL made under Fed.R.Civ. P. 54(d) and Local Civil Rule 11. The challenged costs relate to transcripts of certain depositions taken prior to trial. Local Civil Rule 11 states that "[c]osts for depositions taken solely for discovery or used only for impeachment purposes are not taxable," and explicitly provides that costs are to be awarded for depositions introduced at trial or cited in summary judgment rulings.

Section 1920(2) of Title 28, U.S.C., authorizes a judge or clerk to tax costs "for all or any part of the stenographic transcript necessarily obtained for use in the case." *See, e.g., Electronic Specialty Co. v. International Controls Corp.,* 47 F.R.D. 158, 162 (S.D.N.Y.1969) (recovery of costs proper for deposition which "appeared to be reasonably necessary to the parties in light of a particular situation existing *at the time it was taken.*") (emphasis added); *Brager & Co. v. Leumi Securities Corp.,* 530 F.Supp. 1361, 1367 (S.D.N.Y.), *aff'd,* 697 F.2d 288 (2d Cir.1982). The relevant time period for the "necessary" determination is thus at the time the deposition was taken, and the USFL argues that it is in that context that the "taken solely for discovery" inquiry of Local Civil Rule 11 must occur.

The deposition transcripts for which the USFL seeks reimbursement would certainly have been deemed "necessary" at the time they were taken. The Court finds that in this case those depositions were not taken solely for discovery or impeachment purposes. Under the NFL's unsupported interpretation of the rules, the deposition of Commissioner Rozelle, whose trial testimony took a full week and was repeatedly cited by this Court in its denial of the judgment n.o.v. motions, would not have been "necessary" enough to be taxed.

Costs for all of the depositions taken by the USFL during the abbreviated, hectic discovery phase in this case qualify under the applicable standard, and those costs will be assessed. The full amount of $62,220.92, including the $42,679.71 in deposition transcript costs, are taxable.

---

15. Because the time entries regarding the fee applications do not suffer the same vagueness problems as the records for the case in chief, the 10% reduction for those ambiguities will likewise not be deducted from the hours claimed for the fee petition.

16. The NFL's general contentions that no fees at all should be rewarded, because the USFL was not a "prevailing party," are also asserted with regard to the statutory costs. For the reasons stated in this opinion, *see,* Part 2. above, those arguments are without merit.

## CONCLUSION

The USFL is awarded $5,515,290.81 in attorneys fees. The USFL has reserved the right to submit additional affidavits concerning fees incurred during the argument of this petition; those additional applications will be made within 30 days of the issuance of this opinion. Additionally, the USFL's $62,220.92 costs motion is granted.

SO ORDERED.