COLLOTON, Circuit Judge,
concurring in part and dissenting in part.
I would affirm the judgment of the district court, including its grant of summary judgment- to the City of Brooklyn Park, because I believe the contrary conclusion *1178 works an unwarranted expansion of municipal liability beyond the holding of Kuha v. City of Minnetonka, 365 F.3d 590 (8th Cir.2003). In Kuha, we held that the plaintiff could pursue a claim against the city based on an alleged unconstitutional “policy” of using police dogs to bite and hold without warning, where the police department’s dogs were trained to bite and hold all suspects, the city’s policy specified that warnings were required in some circumstances but made no mention of warnings in others, and the chief of police testified that the use of dogs to bite and hold a suspect without warning was in accordance with departmental policy. Id. at 606-07.
We have emphasized in Kuha and elsewhere, however, that a “policy” that may give rise to municipal liability under 42 U.S.C. § 1983 for “causing]” a deprivation of rights must be “an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.” Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir.1999) (emphasis added). This is because “[mjunicipal liability under § 1983 attaches where — and only where— a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.” Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion) (emphasis added); see also Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion); Jane Doe A v. Special Sch. Dist., 901 F.2d 642, 645 (8th Cir.1990). In this circuit, the first task in considering potential municipal liability for an allegedly unconstitutional policy is to determine what is the governmental body’s policy. Dick v. Watonwan County, 738 F.2d 939, 943 (8th Cir.1984). “The second task is to determine whether that policy is unconstitutional.” Id. A policy that leaves discretion to individual officials, who might later act unconstitutionally, but does not “affirmatively sanction” the unconstitutional acts, does not itself give rise to liability under § 1983. Id.; see also Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir.1985) (“[T]he plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiffs injury, but that the policy itself was unconstitutional.”).
Unlike Kuha, the evidence here does not support a finding that the City of Brooklyn Park made a deliberate choice to use police dogs by giving bite-and-hold commands without advance warning. The City’s policy does provide for the use of dogs in searching for, apprehending, or arresting certain persons, but it is not unconstitutional to use dogs for those purposes. The constitutional problem arises from the manner in which the dogs are used, and Szabla must show that the City’s policy “affirmatively sanctioned” using the dogs in an unconstitutional manner.
The policy, however, does not give official sanction to using dogs to bite suspects without advance warning. An officer may use a dog in arresting a suspect without any biting at all, simply by announcing the dog’s presence in order to persuade the suspect to comply. (App.306). As contrasted with Kuha, the dogs in this case were not trained to bite and hold all suspects. Szabla himself points out: “When a dog is given a command to search, he should not bite anybody; however, when he is given a command to track, the dog knows that it is acceptable to bite. (A.314).” (Br. of Appellant, at 10). If a police officer does elect to give a “track” command, then the written policy does not evidence a deliberate choice to refrain from warning suspects about the use of dogs, and there is no testimony from a policymaker, as in Kuha, ratifying the un *1179 constitutional conduct. The statements of an individual police officer equating “apprehension” of suspects with unconstitutional “bitework,” ante, at 1176, does not amount to a conscious decision by city policymakers to choose that course of action.
Indeed, Szabla’s principal contention has been that the City’s failure to have a policy giving guidance on canine use “foster[ed] the use of excessive force,” and thus amounted to a constitutional violation. (Br. of Appellant at 26). Some may view the absence of a considered policy on how to use police dogs and whether to give warnings as “worse” than adoption of a policy that consciously elects to use unconstitutional dog bites in only limited cases, cf ante, at 1176, n. 4, but the failure of the City to create more detailed rules for the use of dogs does not make the existing policy unconstitutional. See Dick, 738 F.2d at 942 (“The Board might have chosen to adopt more detailed guidelines, and such rules might have averted the mistake that was made in this case, but the Board’s decision to rely on its employees’ judgment is certainly not unconstitutional in and of itself.”). It is the deliberate choice by policymakers to affirmatively sanction an unconstitutional practice that creates the potential for municipal liability based on an unconstitutional “policy.” Id. at 943. Deliberate indifference to constitutional violations arising from the absence of a clear policy (often characterized as the “failure to train” police officers) may violate the Constitution in limited circumstances, City of Canton v. Harris, 489 U.S. 378, 387-88, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), but liability on that basis is analytically distinct from liability for maintaining an unconstitutional policy.
In this case, the district court, noting that Szabla’s apprehension was an isolated incident, properly concluded that there is insufficient evidence to support a claim of inadequate training against the City, and the court does not suggest otherwise. There is likewise insufficient evidence to show an official policy to use police dogs to bite and hold suspects without warning. Therefore, I would affirm the judgment of the district court.